Number 152192 United States v. King-Belin Mr. Garrity. Good morning. May it please the court, my name is Paul Garrity. I represent Mr. Biela. If I could, I'd like to start out with the seizure issue initially. It's my contention, I think I made it pretty clear in the brief, that the seizure in this case took place at the time Officer Bissonette pursued Mr. Bielan, came within his personal space, came within an arm's reach of Mr. Bielan, and Mr. Bielan yielding to Mr. Bissonette's, Officer Bissonette's approach, turned to face him. It's at that point, we submit, that the seizure took place. I acknowledge there was no physical touching then, but based on the way Officer Bissonette conducted himself, both by pulling the cruiser in front of the group of individuals who were walking down Norfolk Street, cutting off their path of travel, and by ignoring Mr. Bielan's, Officer Bissonette's, approach. Mr. Bielan's attempts to not engage with Officer Bissonette, Officer Bissonette made it clear to Mr. Bielan, both subjectively and objectively, any objective person would feel that they were not free to leave given the way Officer Bissonette dealt with the situation. He called out to Mr. Bielan when he first recognized him, said, Yo King, what's up? Mr. Bielan looked at him, kept on walking as he's entitled to do. He's not required to engage with Officer Bissonette. Bissonette wasn't satisfied with that, hurried after him, he said, he quickened his pace and got within Mr. Bielan's personal space. Mr. Bielan turned around and said, no individual, no objective, reasonable person would feel that they were free to leave given the way Officer Bissonette conducted himself. And it would be simply untenable to believe that Mr. Bielan or any other individual could believe that they could continue on their way with an officer like Officer Bissonette right on their heels, within an arm's reach, right within his personal space. And if he's seized, as I contend, then the issue is what's the basis for the seizure? The record, I believe, is pretty clear that they were two officers, Officer Bissonette and the other officer, were responding to the report of a fight among kids or girls as Judge Saylor made a determination at the suppression hearing that was taking place at the corner of Norfolk and Fessenden Street, which was across the street from where the officers turned the cruiser in front of Mr. Bielan and the other individuals. Is that really pertinent? The district court finds that there were seven different factors that go into its decision to justify the almost instantaneous pat, frisk, and then the discovery of the weapon in the waistband. I don't know that the fact that the police were called to investigate something else actually helps your case very much. Well, Judge, I'm not putting it forward that that's a critical factor, but I think it illuminates what was really going on here. Unfortunately for your client, one of the officers recognized him as someone he'd arrested before who had a long track record, and he was trying to pull away from his crowd and get away from the police. Well, Judge, I guess the reality of the situation was that this whole incident took place within seconds. If you look at the exhibits that were introduced at the suppression hearing, Officer Bissonette testified to the time and space. He referenced, and there's a photograph that was introduced of Mildred Avenue. There was a light pole. He said it was about 10 to 20 feet away, and the interaction with Mr. Bielan on Mildred Street took place by an electrical box, which was even closer to Officer Bissonette's cruiser than the light pole. So this took place very quickly. The factors that Judge Saylor addressed, if you accept my proposition that the seizure took place at the time Mr. Bielan turned around, didn't include seven factors. If the seizure took place at the time Mr. Bielan turned, then the nervousness and looking for a means of escape don't factor into the situation. The issue, the factors, I guess, that would have to be looked at in terms of whether or not the seizure was supportable were Officer Bissonette's knowledge of Mr. Bielan. He arrested him three years prior for a gun offense, but that knowledge was undercut by Officer Bissonette's testimony that he was aware of factors or issues to look at with respect to an armed gunman, and Mr. Bielan displayed none of that that night. So there was no basis to believe he was carrying a weapon. The hoodie he was wearing, I'd say that's somewhat of a mixed bag. The temperature chart that was introduced in Officer Bissonette's testimony was that it was a fairly warm night, high 60s to close to 70, but the photographs introduced indicated that there were people there wearing coats, sweatshirts, long pants. This was around 645 at night in the middle of September. In an area where Officer Bissonette testified, he was aware that a number of individuals wore hoodies. So I'd say the hoodie was really of not a whole lot of significance. Mr. Bielan, the other factor, Mr. Bielan walked away. I thought the hoodie was made out of heavy material. It wasn't a lightweight something. Well, Officer, it was. There was testimony it was a heavy material, but there was a photograph of a woman in the park right there sitting on a bench, and this photograph was introduced at the hearing wearing a sweatshirt. There was a woman wearing a coat, so the heaviness I would submit is really not of a whole lot of significance given the time of year, time of day. It's not clear to me, are you arguing that there was clear error in the factual findings made by the district court? Not the factual findings, but I'm arguing that the legal conclusion that But the legal conclusion that you're arguing, which is that the seizure occurred before there was any physical contact. Right. That's really a legal conclusion that's got to be based on factual findings. The district court certainly didn't find that that was when the seizure occurred. The district court found, as I understand it and from its iteration of the factors, that this was a near instantaneous thing, all of which really occurred at the time Bielan's arm was seized. Judge, even though the subjective beliefs of officers in that aren't really overly relevant, I think they illuminate what was really going on here in terms of when the seizure took place. I know that, but you've still got to convince us on this record, all right, that we should come up with an unyielding belief that the seizure occurred when you said it did which heard the evidence obviously concluded otherwise. Well, Judge, Judge Saylor didn't expressly address the argument about the seizure being at the time he turned. That's true, but it's implicit in his conclusion because if he had believed that the seizure occurred at the time you said, then some of the factors he listed wouldn't have been relevant. I'll let you answer that, but you've got a second issue in this case. I do, and I'll move on to that after I address the question, Judge. Your Honor, I don't disagree that implicit in Judge Saylor's ruling is that he found that the seizure took place later. I'm arguing that I believe that conclusion was legally erroneous, and I say that because if you look at all of the factors, the totality of the circumstances at that time, no reasonable individual with an officer pursuing who has ignored at least two attempts to not engage with the officer would believe that they were free to walk away and ignore a pursuing officer who was right there within his personal space. I think it defies reality that that's not when the seizure took place, and I'd submit that. I'll give you one minute on your second issue. Your Honor, I think Judge Saylor made it clear to Mr. Bielan he could control the defense. He said at least three times on the record to Mr. Bielan, you can control the defense. I'm not aware of any case law that allows a defendant to control a defense strategy. In fact, I think the U.S. Supreme Court in Gonzales has indicated it's to the contrary. They get to make the big decisions on a matter of strategy. We get to make those decisions, even if they fly in the face of what the defendant wants to see take place, and that's because of the reasons outlined in the case law I put in my brief. The colloquy that Judge Saylor engaged with Mr. Bielan on didn't really go into whether or not I was in the best position to make those strategy decisions, and that he wasn't trained in the law, and that he wasn't trained in those strategy decisions. I know we talked about consequences of what could happen to him if he waived those defenses, but didn't go into why I would be in the best position to do so. Okay, thank you very much. Thank you. Good morning. May it please the Court. Kunal Pastry, Chief of the United States. In this case, the district court, based on a careful review of the facts, appropriately concluded that there was both reasonable articulable suspicion that criminal activity was afoot, and a particularized objective basis. By particularized, I mean particularized. Asked Mr. Bielan objective basis for suspicion that he was armed and dangerous. What basis was there for suspicion as of before there was any physical contact between the parties? Even before. I believe there were seven factors in judgment. Most of those seven factors don't apply before there was physical contact. I'd submit at least four or five of them do. So first of all, the high crime area. And it's not just generalized statements about a high crime area. This was a high crime area where there was firearm violence. So that factor was present. Secondly, the defendant was personally known to the officer and personally known to have a history of illegally carrying a firearm. The district court outlined how this factor was a substantial factor that really tipped the balance. That second factor was equally present before any touching. Third, the defendant's clothing, the heavy sweatshirt that could have concealed a weapon, that was obvious from the very get-go, and that factor was present. Fourth, the defendant peeled off from the rest of the group. So the officer's approach, the rest of the group seems to stay. Mr. Bielan peels off from that group and continues walking. That's a fourth factor. Let me pause there for a second to also distinguish something that was said, which was that the vehicle, the cruiser, somehow impeded his movement and was parked in front. That's not true. In fact, the record is clear that the car is parked, and Mr. Bielan peels off and essentially starts walking and walks in front of the cruiser and walks towards the park. But the cruiser's right in the crosswalk. The cruiser's at the intersection of the street with its door open. The cruiser essentially pulls up on a perpendicular street to where they are walking. So the cruiser walks up, parks on a perpendicular street. The defendant and the group were walking, essentially heading towards where the cruiser was. But my point simply is the defendant then peels off and starts walking in front of the cruiser, walking towards the park. One thing puzzles me about this. I think the government's argument is that he wasn't stopped at that point. There was no seizure at that point, correct. Okay. And yet you then cite as a basis for stopping him the fact that he wouldn't stop. So it's kind of a catch-22 where you say we're signaling you to stop. Right. But this isn't a seizure. But if you don't stop, we're then going to convince a United States District Court judge, as you did here, to give some weight to the fact that you didn't stop and then justifying us to stop you. It's just part of the mix. But isn't it a catch-22? It's not. Why not? Because what it's really doing is we're simply saying that the analysis of whether there's a seizure really goes to whether or not there is any yielding to show of authority and things of that nature, and whether or not the defendant stops or does not stop or how he reacts is part of the analysis of whether or not he submits to that show of authority. And that's really the central question. But we're on the second issue, which is you're saying you didn't stop him at that point, but you're saying that when you did stop him, it was justified. And the judge included in his analysis the fact that the guy peeled away and hurried past Officer Bissonnette. So how can we say that a person's exercise of their right to move, when you're telling us they weren't confronted with enough authority to cause them to yield, should nevertheless itself be included as one of the ingredients that you add to the other ingredients to get a lawful basis of stopping? Because I think the case flows clear that that is part of the mix. And I say that because, for example, flight is a more, let's just assume just a more extreme form of flight. The same issues arise, right, if he had just run off in some other direction. Similarly, flight can be used to go into the mix of information, and it's not a catch-22 situation. Are you suggesting if he had started running away from the officer instead of walking, that the officer then would have been entitled to chase him down the street? I'm saying the officer would have been entitled to consider that factor as part of the overall mix of factors. That doesn't get you very far. Would you answer my question? I think based in, if all the other factors are equally present, then perhaps. And this goes back to Judge Sellea's question. I mentioned four of the factors. The fifth of the seven factors that was present, regardless of anything else, was that there were children playing nearby in a park. So if you've got those five factors, I recognize it's a slightly different case. But in that case, I'd submit it may have been a closer call. But, yes, that may have been. Was he moving away from the park where the children were or toward the park where the children were? I believe it was away. I believe the park was adjacent. I'm not sure he was going away from the park, necessarily. My understanding is that the park was essentially adjacent. I don't believe there's anything in the record indicating. I know there's a map there, and I concededly don't at this point believe he was going opposite. I think he was going adjacent to the park. But in any event, five of the seven factors are present, even before any physical touching. It seems to me some of these factors here, I mean, the quote-unquote high crime area, there's a nearby park with children playing, don't some people spend virtually most of their life in proximity to one of those two things that you would then have us cite as a reason why the police can stop them? Judge Gatto, that's right. By itself, it would cause some concerns. And that's why what I'd say is the most compelling part of the district court's analysis is not just its articulation of these factors, but what it does next, which is as part of every analysis, it talks about how any one of these factors would not be enough. So it talks about the high crime area. Right, but you still want, you know, you can take all the zeros in the world you want, you don't get to one. So you want us, you say, oh, don't, we're not putting too much weight on that. But you are putting weight on it, and the judge actually told us that one of the factors, although he was very careful to say it wasn't sufficient, were some of these factors we're discussing. So I think you have to say, to sustain this decision below, that those ingredients that he included in weighing were worth some weight. They are worth some weight. I'm not suggesting they're not worth some weight. So if you wear a hoodie in Boston, Massachusetts at 6.45 in the evening, ka-ching, there's a little piece of weight that goes into the thing. I'm simply suggesting it's not error to consider that. And I respectfully suggest this is one of those perhaps unusual circumstances where a bunch of zeros sometimes do add up to one, using your analogy, because I think the case law is very clear that even a combination of entirely innocent factors in isolation, where all of them are completely appropriate and none of them in isolation are an appropriate basis to stop someone, when combined, can add up to be reasonable suspicion. And that's what's happening here. And that's why the district court's findings and its analysis is so compelling, because the court goes through each factor, talks about which factors weigh a little bit more than others. In every instance, nearly every instance, talks about why that factor by itself wouldn't be enough. So regarding the clothing, the court is very attuned to the concern you just raised. And the court expressed that concern and says, I want to be very careful that this does not give officers a license to stop everyone wearing a hoodie. If that were the only factor, that would not be sufficient. But it goes in the mix. And that's what we're talking about here, in that the combination of factors, there's no clear error in the factual findings. There may have even been a concession during oral argument that there was no clear error in the findings of fact. And given the factual findings of the court, on this record, when all of those factors are combined, there is both reasonable suspicion for a stop and a frisk in this case. The only other thing I'd say, given the emphasis on the seizure question, is that none of the Mendenhall factors that the Supreme Court has articulated, none of the factors the First Circuit has articulated about what is a seizure, really apply here. There are not multiple officers. There is no display of a weapon. There's no physical touching until the point where we can see there is seizure. I would argue that you can reach rational conclusions other than what has been urged on us, that when the officer got that close to him in his physical space, he no longer felt free. He was cornered. But the district court implicitly did not accept that argument here, finding the seizure. What I'm wondering about is what role in our analysis should we give to how fast all of this happened. This was virtually instantaneous. I'm not certain a split second should make much of a difference. That's correct, Your Honor. What's the law on that? I think that goes to the deference. And that goes to the line of cases I believe you've cited, where there should be some deference given to law enforcement officers on the scene who reasonably are concerned or should be concerned about their safety and the split-second decisions that they make. And we've cited a series of cases where this Court talks about deference there. The final point I'll just say, I know my time's up, is that cases like Smith and Ford, which we've cited and talked about in great detail, contained much greater show of authority. And this Court similarly in that case, as it should here, found that there was no seizure. And we rely on those cases and submit on the briefs. Thank you. Thank you very much.